```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF KENTUCKY
```
**CENTRAL DIVISION** at **LEXINGTON**

```
JAMES LATTANZIO and             )
SANDRA LATTANZIO,               )
                                ) Civil Action No. 09-CV-13-JMH
     Plaintiffs,                )
                                )
vs.                             )
                                )   MEMORANDUM OPINION
THOMAS ACKERMAN, ET AL.,        )        AND ORDER
                                )
     Defendants.                )
```

                    ***   ***   ***   ***

Defendants Ephraim W. Helton, Thomas Ackerman, and Mahogany Hill Farm, LLC, have filed a motion to dismiss the complaint [R. 56] and plaintiffs James and Sandra Lattanzio have filed their response opposing the motion. [R. 63] The time to file a reply in further support has now elapsed. LR 7.1(c).

The Court concludes the motion to dismiss must be granted because the moving defendants' failure to assert the affirmative defenses of release and issue/claim preclusion in their Answers to the plaintiffs' Complaint did not result in their waiver; the Lattanzios's procedural defenses to the enforceability of the Mutual Release are barred by preclusion principles; and the Lattanzios's substantive claims under state and federal law fall within the scope of the Mutual Release.

**I.   Factual Background**

In their Complaint, the Lattanzios allege that on August 15, 2008, they rented a horse barn and pastures from Mahogany Hill

Farm, LLC, through its agent, Thomas Ackerman. They further allege that one month later Ackerman began stalking Sandra and the couple's minor daughter, and on October 30, 2008, Ackerman told the plaintiffs that he was increasing the monthly rental due by $500 and they would be required to prepay utility expenses. In early November, Ackerman caused an agisters lien to be filed against plaintiffs' personal property, and thereafter barred the couple from entering on the property, preventing them from caring for or feeding the horses located in the barn. On November 10, 2008, the Lattanzios filed suit against Ackerman and Mahogany Hill in the Circuit Court of Boyle County, Kentucky. *Lattanzio v. Ackerman*, No. 08-CI-571, Boyle Circuit Court.

The parties thereafter executed a release on December 23, 2008 to resolve the claims between them. The Mutual Release provides:

> ... each of the parties hereto ... do hereby ... release ... the other and their respective agents, servants ... from, any and all claims, actions, causes of action ... whatsoever each may now have on account of, or in any way growing out of, those facts which form the basis of such civil action by which arise as a result of any such claims known, or unknown, ... sustained as a result ... of any facts alleged in such litigation, or which could be alleged therein, or which arise from any prior dealings and/or transactions between the parties ...[1]

[R. 56-3 at 3] The Mutual Release was drafted by Ephraim Helton, counsel for Ackerman and Mahogany Hill Farm, and was signed by James Lattanzio "individually and on behalf of Galen Academy, James

---

[1] The Mutual Release refers to and includes within its scope two other lawsuits filed prior to its execution, *Lattanzio v. Ackerman*, 08-C-867, and *Mahogany Hill Farm, LLC v. Lattanzio*, 08-C-773, both apparently pending in the Boyle District Court.

2

Lattanzio and Sandra Lattanzio," and by Ackerman "individually and on behalf Mahogany Hill Farm, LLC."

The next day, on December 24, 2008, the Lattanzios filed a motion to "supplement" their previously-filed motions for contempt in the Boyle Circuit Court, in which they alleged that they executed the Mutual Release under duress.  On December 29, 2008, Ackerman and Mahogany Hill Farm filed a Motion to Dismiss in the Lattanzios's case before the Boyle Circuit Court on the strength of the Mutual Release.

However, before a hearing on that motion, on January 9, 2009, the Lattanzios filed their Complaint in this action, alleging civil RICO violations and a conspiracy to violate their constitutional rights by Ackerman, Helton, various state and county officials, and James Lattanzio's ex-wife who resides in Maryland.  [R. 2]  The Lattanzios further sought injunctive relief against "intimidation," [R. 5] and to remove the still-pending state court proceedings to this Court because "the two cases are intertwined, (originating from the same acts)," [R. 6]  This Court denied both motions on primarily procedural grounds.  [R. 7, 8]

Helton filed his Answer to the Complaint on February 5, 2009, in which he denied participation in any conspiracy regarding the Lattanzios and noting that he acted solely in a representative capacity for Ackerman.  The Answer does not refer to the pre-existing state court litigation nor the December 23, 2008, Mutual Release.  [R. 11]

3

On February 12, 2009, the Boyle Circuit Court entered an Order dismissing the Lattanzios's claims in light of the Mutual Release, presumably entered shortly after the hearing on Helton's Motion to Dismiss, which the Lattanzios did not attend. In doing so, the court expressly found:

> 2. That the Mutual Release executed by the Plaintiffs and the Defendants which has been filed of record herein, is a valid release, as a matter of law, and there is no evidence to support the Plaintiff's contention that said mutual release was executed under duress, coercion, or the result of fraud. The Plaintiffs and the Defendants each released the claims which they had against the other in the Mutual Release and there is sufficient consideration to enforce the Mutual Release.

[R. 56-3 at 1-2] Upon that finding, the Boyle Circuit Court dismissed the case with prejudice.

Four days later, on February 16, 2009, Ackerman and Mahogany Hill Farm filed their Answer to the Complaint in this case. Their Answer closely tracks the language of Helton's Answer, similarly denying participation in any conspiracy with government officials. The Answer likewise makes no reference to the recently-concluded state court litigation or the December 23, 2008, Mutual Release. [R. 13]

Although the moving defendants were, as early as December 23, 2008, armed with a Mutual Release apparently broad enough to cover the claims asserted in this proceeding, as well as with a February 12, 2009, state court order dismissing the Lattanzios's claims with prejudice, the moving defendants made no effort to utilize these tools defensively in this proceeding prior to the filing of their

4

December 18, 2009, Motion to Dismiss. [R. 56] The motion does not identify the civil rule under which they wish to have their motion considered, and does not clearly indicate with respect to each claim between each party whether dismissal is sought based upon a theory of release, claim preclusion, issue preclusion, or on the merits, each a distinct legal principle. Nonetheless, the Court ultimately concludes that the prior state court adjudication and the Mutual Release collectively bar the assertion of the claims asserted herein.

**II. Discussion**

    A.    The Defendants did not waive the defenses of release or <u>res judicata</u>.

As a threshold matter, none of the moving defendants asserted the affirmative defenses of release or res judicata in their Answer to the Complaint. [R. 11, 13] The Federal Rules of Civil Procedure plainly require that:

> In responding to a pleading, a party must affirmatively
> state any avoidance or affirmative defense, including:
> ...
> release;
> res judicata; ...

Fed. R. Civ. P. 8(c). The rule is mandatory and should not be lightly disregarded. Some courts have strictly enforced Rule 8(c)'s requirement, holding that failure to timely assert an affirmative defense in an answer or at an early stage of litigation results in its waiver. *See Castro v. Chicago Housing Auth.*, 360 F.3d 721, 735 (7th Cir. 2004) ("if a defendant does not raise

defenses at the time of filing an answer, those defenses are deemed waived. ... if Rule 8(c) is not to become a nullity, we must not countenance attempts to invoke such defenses at the eleventh hour, without excuse and without adequate notice to the plaintiff."); *Youren v. Tintic School Dist.*, 343 F.3d 1296, 1302 (10th Cir. 2003); *Radford Trust v. First Unum Life Ins. Co. of America*, 321 F.Supp.2d 226, 242-43 (D. Mass. 2004) (refusing to consider release as affirmative defense where no exception to rule of waiver applied). The fact that a plaintiff may be aware of the settlement agreement itself is irrelevant - it is the plaintiff's notice of the defendant's intention to rely upon the settlement as a defense to a claim in pending litigation which Rule 8(c) seeks to ensure.

Nonetheless, other courts have held that a failure to comply with Rule 8(c) does not necessarily result in a waiver. As our sister court has recently noted,

> Such a failure, however, is not necessarily fatal. "Failure to raise an affirmative defense by responsive pleading does not always result in waiver." The purpose of Fed. R. Civ. Proc. 8(c) is to place the opposing party on notice of the affirmative defense so she can effectively respond to it. This is not a situation where Defendant attempted to raise the defense on the eve of trial. Plaintiff had ample opportunity to consider and fully respond to this defense in its summary judgment opposition. While Defendant should have been more diligent in raising this defense, the Court does not believe Plaintiff has been prejudiced by Defendant's failure to raise [it] earlier in these proceedings.

*Grego v. Meijer, Inc.*, 239 F.Supp.2d 676, 683-84 (W.D. Ky. 2002) (internal citations omitted) (citing *Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir. 1997)). This more permissive approach has been

6

followed in the Sixth Circuit with respect to such defenses in appropriate circumstances. *Westwood Chemical Co., Inc. v. Kulick*, 656 F.2d 1224, 1227-28 (6th Cir. 1981).

In the present case, although the moving defendants inexplicably delayed in their assertion of the defense, (1) the plaintiffs were aware of the release and explicitly referred to it in their Complaint; (2) the defendants' motion to dismiss based upon the release was filed well before the close of discovery in this matter; (3) the plaintiffs have not alleged any prejudice or asserted waiver in response to the motion; and (4) the plaintiffs have responded to the defendants' motion to dismiss on the merits. In the absence of more clear prejudice to the plaintiffs by the defendants' delay, the Court will not find the defense waived under these facts.

    B.    The Lattanzios's procedural defenses are barred by preclusion principles and their substantive claims are <u>covered by the Mutual Release</u>.

In their motion, the defendants seek dismissal of the Lattanzios's claims as released, barred by res judicata, or both. [R. 56 at 2-4] In response, plaintiffs contend that res judicata does not apply to bar claims which were never actually litigated in the state courts, such as the validity of the agisters lien or the claims subsequently asserted by the Lattanzios in a new lawsuit filed in Scott Circuit Court on August 28, 2009. Because the parties' briefing suggests some confusion regarding the governing principles, a brief explanation is in order.

7

The December 23, 2008, Mutual Release executed by the parties is a written contract, and is enforceable by a court as such. The Boyle Circuit Court's dismissal of the Lattanzios's lawsuit was an enforcement of that contract as written, and did not constitute an adjudication on the merits of any issue, *except* to the extent expressly articulated by that court in its order dismissing the case. The fact that a court dismisses a case in light of a privately agreed upon settlement does not transform the judgment into an adjudication on the merits of the claims asserted in the complaint. *See Rein v. Providian Finan. Corp.*, 270 F.3d 895, 899-900 (9th Cir. 2001); *Carver v. Nall*, 172 F.3d 513, 515 (7th Cir. 1999) ("A settlement agreement that has not been integrated into a consent decree is not a judgment and cannot trigger res judicata.").

The preclusive effect of the Boyle Circuit Court's February 12, 2009, order is therefore limited to the matters it actually decided: that the release was valid; not the product of duress, was supported by consideration, and constituted a release by "the Plaintiffs and Defendants ..." [R. 56-3 at 1-2] This is not to say that res judicata (or claim preclusion in modern terminology) does not assist the moving defendants; in fact, it assists them more than their moving papers suggest.

As a threshold matter, because this case is not before the Court pursuant to its diversity jurisdiction, the Court does not import Kentucky's preclusion principles as part of its substantive

8

law under the *Erie* doctrine. Rather, this case falls within the Court's federal question jurisdiction. Nonetheless, a federal court must afford full faith and credit to state court judgments. U.S. Const., Art. IV, § 1. This rule is codified in the Full Faith and Credit Act, which requires a federal court to afford preclusive effect to a state court judgment to the same degree it would be afforded such effect by a state court located in the jurisdiction where the federal court sits. 28 U.S.C. § 1738; *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984). In Kentucky, claim preclusion applies to bar "not only to the issues disposed of in the first action, but to every point which properly belonged to the subject of the litigation in the first action and which in the exercise of reasonable diligence might have been brought forward at the time." *May v. Webb*, 2004 WL 1699910, at * 1 (Ky. App. July 30, 2004).

In the present case, James Lattanzio's claim that he was coerced into signing the Mutual Release was decided against him by the Boyle Circuit Court, and he may not relitigate that issue here. Although none of the parties has raised the issue, the Boyle Circuit Court also found the Mutual Release binding upon "the Plaintiffs and Defendants ..." [R. 56-3 at 1-2], apparently concluding that the Mutual Release was binding upon Sandra Lattanzio, a party to that litigation who did not sign the

9

release.[2]  Accordingly, the Lattanzios are precluded from the relitigating defenses to the enforceability of the Mutual Release in this forum.  *DLX, Inc. v. Kentucky*, 381 F.3d 511, 520-21 (6th Cir. 2004).

James Lattanzio asserts that he is free to litigate any substantive claim not actually decided on the merits by the Boyle Circuit Court, including his challenge to the validity of the agisters lien and those claims he subsequently asserted in the Scott Circuit Court.  Kentucky's law of claim preclusion bars not only claims actually litigated in the prior case, but also those claims which could or should have been litigated in the prior action because they arose out of the same facts or transactions.  *Whittaker v. Cecil*, 69 S.W.3d 69, 72 (Ky. 2002) (final judgment precludes subsequent litigation of claims that were or could have been presented in the prior action).  The Sixth Circuit has explained:

The doctrine of res judicata includes two separate

---

[2] While James Lattanzio purported to sign the Mutual Release on behalf of Sandra Lattanzio, it is hornbook law that a spouse does not - by virtue of that status alone - possess actual authority to legally bind his or her spouse, and the record is devoid of any indication that Sandra Lattanzio had either executed a power of attorney or, through her conduct with the defendants, created an appearance of authority in her husband.  *Bennett v. Mack's Supermarkets, Inc.*, 602 S.W.2d 143, 147 (Ky. 1979) ("There is no longer in this state a presumption of agency between husband and wife in dealing with each other's property."); *see also* Restatement, Agency 2d, §22(b); *Krause v. Reyelts*, 646 N.W.2d 732, 736 (S.D. 2002) (husband's signature releasing claims against homebuilder did not bind nonsigning spouse in absence of apparent authority); *Poarch v. Alfa Mut. Ins. Co.*, 799 So.2d 949, 955 (Ala. Civ. App. 2000).

>  concepts-issue preclusion and claim preclusion. Claim preclusion or true res judicata, the issue before this panel, "refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit."

*Wilkins v. Jakeway*, 183 F.3d 528, 532 (6th Cir. 1999) (internal citations omitted). Because the claims described by Lattanzio all relate to the same dispute which formed the basis for the action in Boyle Circuit Court, they too are concluded by the resolution of that action in February 2009. These claims also self-evidently fall within the broad language of the Mutual Release to include claims "known, or unknown ... or which could be alleged [in such litigation] ..."

While the Lattanzios did not assert their federal claims in the prior state court litigation, such claims are likewise foreclosed because they arose out of the same facts and could have been presented in that litigation. *Morgan v. Standard Elec. Co., Inc.*, 62 F. App'x 110, 111 (6th Cir. 2003); *Hutcherson v. Lauderdale Co., Tenn.*, 326 F.3d 747, 758-60 (6th Cir. 2003); *Maiden v. Rozwood*, 2000 WL 712537, at *3 (6th Cir. May 23, 2000).

Finally, with respect to the Lattanzios's claims against Helton, they appear to allege both that Helton conspired with local officials to violate their civil rights prior to the execution of the Mutual Release, and that he coerced them to execute the Mutual Release on December 23, 2008, through improper means. The former category of claims are barred by the terms of the Mutual Release

itself, which extends to release claims against "the other *and their respective agents, servants ...*" from claims "... in any way growing out of ... any facts alleged in such litigation ... or which arise from any prior dealings and/or transactions between the parties ..." Under Kentucky law, the acts taken by an attorney for the benefit of his client are those of an agent for his or her principal. *Daugherty v. Runner*, 581 S.W.2d 12, 16 (Ky. App. 1978); *Ball v. Stalnaker*, 517 F. Supp. 2d. 946, 950 (E.D. Ky. 2007). Both the allegations of the Lattanzios and Helton's own statements indicate that he was, at all relevant times, acting on behalf of Ackerman and Mahogany Hill Farms as their attorney-in-fact, and thus was their agent with respect to the events at issue. Those claims were therefore released through execution of the Mutual Release. The latter category of claims - relating to validity and enforceability of the Mutual Release itself - were actually decided by the Boyle Circuit Court in its February 12, 2009, order dismissing the case, and are therefore barred. *Whittaker*, 69 S.W.3d at 72.

Accordingly, **IT IS ORDERED** that:

1. The motion of Defendants Helton, Ackerman, and Mahogany Hill Farm, LLC, to dismiss the Complaint against them [R. 56] is **GRANTED**, and the claims against them are **DISMISSED WITH PREJUDICE.**

This the 1st day of February, 2010.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge